IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Eva Renee Johnson,<br><br>                      Plaintiff,<br><br>vs.<br><br>Nancy A. Berryhill, Acting<br>Commissioner of Social Security,<br><br>                      Defendant. | Civil Action No. 6:16-2669-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on December 15, 2012, alleging that she became unable to work on December 15, 2012. Both applications were denied initially and on reconsideration by the Social Security Administration. On August 23, 2013, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff, her attorney, and witness Harry Leonard Waters appeared during a video hearing on November

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

5, 2014, considered the case *de novo*, and on January 28, 2015, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on June 3, 2016. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since December 15, 2012, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: petit mal seizures, by history, and borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine, repetitive tasks and avoiding all exposure to hazards.
>
> (6) The claimant is capable of performing past relevant work as a cashier/stocker as she actually performed it. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).
>
> (7) The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2012, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He

must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 28 years old on her alleged disability onset date (December 15, 2012) and 30 years old on the date of the ALJ's decision (January 28, 2015). She completed the twelfth grade in special education classes, and she has past relevant work experience as a cashier/stocker (Tr. 18, 28).

On April 23, 1996, when she was 12 years old, the plaintiff was assessed with a full scale IQ of 53, a verbal IQ of 56, and a performance IQ of 59 on the Wechsler Intelligence Scale for Children ("WISC") (Tr. 266-68). At the same age, the plaintiff was administered the Wide Range Achievement Test Revision 3 ("WRAT-3). This showed a reading test score of 57, a math score of 63, and a spelling score of 65 (Tr. 266). The plaintiff was found to be eligible for an Individualized Education Program ("IEP") in special education (Tr. 286).

State agency physicians Kevin King, Ph.D., and Janet Boland, Ph.D., prepared assessments of the plaintiff's mental ability to conduct work-related activities on April 29 and July 29, 2013, respectively (Tr. 52-57, 80-85). Drs. King and Boland each opined that the plaintiff had moderate restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration (Tr. 52, 80). Drs. King and Boland both noted the plaintiff was capable of understanding, remembering, and carrying out short, simple instructions; attending to a simple task for an extended period with minimal supervision; asking simple questions for clarification; seeking assistance as necessary; maintaining acceptable standards of neatness and cleanliness; using public transportation; and avoiding normal workplace hazards (Tr. 57, 85).

5

On March 17, 2013, the plaintiff had a comprehensive disability medical examination with Pravin Patel, M.D. The plaintiff reported that she first had a seizure when she was nine years old, has since had absence seizures, but has never had a grand mal seizure (Tr. 302). The plaintiff did not seek treatment for seizures between 2005 and 2013 (Tr. 266-91). Dr. Patel observed a normal gait; ability to get on and off the examination table unassisted; ability to tandem walk; ability to walk on her heels and toes; ability to bend forward to touch her toes; and ability to squat. His impression was petite mal or absence seizures, by history. Lastly, Dr. Patel noted that the plaintiff was fully oriented; was able to handle her own funds; can perform the work-related functioning of walking, listening, seeing, hearing, and reasoning; can prepare simple meals; and can travel without a companion, but it may interfere if she develops absence seizures (Tr. 302-05).

On April 17, 2013, licensed clinical psychologist, J. Joe Neely, Ph.D, evaluated the plaintiff. The plaintiff stated she cared for her young children, did chores around the house such as washing dishes and cleaning, and was unable to afford medication for seizures. Dr. Neely observed the plaintiff to have clear and understandable speech, be a good informant concerning her history, have no difficulty focusing her attention, normal motor skills, and good motivation on the testing. Dr. Neely conducted the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), finding a full scale IQ composite score of 63, verbal comprehension composite score of 70, perceptual reasoning composite score of 65, working memory composite score of 80, and processing speed composite score of 59. Dr. Neely diagnosed the plaintiff with mild intellectual limitation and seizure disorder, further opining that if the plaintiff's seizure disorder were better controlled, she would be able to engage in her past relevant work (Tr. 307-10).

State agency physicians James Weston, M.D., and William Lindler, M.D., each prepared assessments of the plaintiff's physical ability to conduct work-related activities on May 1 and July 26, 2013, respectively (Tr. 54, 82-83). Drs. Weston and Lindler

each opined that the plaintiff had no exertional, postural, manipulative, visual, or communicative limitations (Tr. 54). The plaintiff was instructed to avoid all exposure to hazards due to seizure precautions (Tr. 54, 82). Drs. Weston and Lindler each noted that with "proper meds she should be able to perform work as described in this [residual functional capacity] ('RFC')" (Tr. 54, 83).

The plaintiff presented to the hospital in July 2013 with reports of a seizure. At that time, she ambulated without difficulty and was fully oriented (Tr. 316-22). The plaintiff was referred to neurologist Jeff A. Benjamin, D.O., with complaints of partial seizures and generalized tonic-clonic seizures. Dr. Benjamin examined the plaintiff on February 24, 2014. He noted that the plaintiff was oriented to person, place, and time, her speech was fluent, there was no evidence or cortical defects, she had full strength in her upper and lower extremities, and she was "cognitively very slow." He switched the plaintiff's medications from Dilantin to Keppra (Tr. 328-30). In an RFC questionnaire, Dr. Benjamin stated that the plaintiff complained of seizures four hours per week with ten to twenty minutes of confusion and exhaustion following the seizures (Tr. 351-52).

At the administrative hearing, the plaintiff testified to "straightening up shelves" at Big Lots for five years (Tr. 29-30). Her work history report listed Big Lots as marketing, but indicated that she started on the cash register and eventually moved to straightening up the shelves "because of dysfunction" (Tr. 221-22). The plaintiff further testified that she takes care of her father by washing him, getting him dressed, and giving him medication (Tr. 37), and she takes care of her younger children who live in her home (Tr. 230). In a work history report dated February 14, 2013, the plaintiff indicated that she takes care of herself by washing dishes, cleaning the house, handling her personal care, preparing meals such as frozen dinners, attending church twice a week, handling her own finances, and shopping (Tr. 229-33).

**ANALYSIS**

The plaintiff argues that the ALJ erred in finding her impairments do not meet or medically equal Listing 12.05C and in failing to properly explain the RFC finding (doc. 16 at 1).

*Listing 12.05*

The regulations state that upon a showing of a listed impairment of sufficient duration, "we will find you disabled without considering your age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). A listing analysis includes identifying the relevant listed impairments and comparing the criteria with the evidence of the plaintiff's symptoms. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that "[w]ithout such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination").

> At the time of the ALJ's decision[2], Listing 12.05 provided, in pertinent part:
>
> *Intellectual Disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***

---

[2] Listing 12.05C was amended as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, in which the Social Security Administration states, "We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 26, 2016).

> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> ***

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B, C.

> The ALJ found as follows as to paragraphs B and C of Listing 12.05:
>
> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. The claimant's full scale IQ was found to be 63. (Exhibit 7F)
>
> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant has shown no deficits in adaptive functioning, as evidenced by her ability to work successfully for 8 years and the friendship she has maintained with Harry Waiters, her boyfriend and father of her younger child.

(Tr. 16).

The plaintiff framed the issue before the court as error by the ALJ in failing "to find that Plaintiff meets Listing 12.05C" (doc. 16 at 1, 2, 10), and the Commissioner confined her arguments to paragraph C of Listing 12.05 (doc. 17 at 7-13). However, within the plaintiff's arguments regarding the alleged errors by the ALJ at step three of the sequential evaluation process, the plaintiff also contends that she meets Listing 12.05B (doc. 16 at 2-4). Accordingly, the undersigned will first consider the plaintiff's arguments regarding Listing 12.05B.[3]

---

[3] The plaintiff also argues in passing that the ALJ erred in failing to consider whether her impairments equal Listing 12.05A (doc. 16 at 3), which, at the time of the ALJ's decision, required "[m]ental incapacity evidenced by depending upon others for personal needs . .

9

The plaintiff argues that the ALJ failed to properly consider the IQ testing provided in her school records (doc. 16 at 2-3). As set forth more fully above, on April 23, 1996, when she was 12 years old, the plaintiff was assessed with a full scale IQ of 53, a verbal IQ of 56, and a performance IQ of 59 (Tr. 266-68).[4] The ALJ mentioned these IQ scores in passing in his assessment of the plaintiff's RFC (Tr. 17), but the scores were not mentioned nor apparently considered in his consideration of Listing 12.05B. Instead, the ALJ relied on testing performed by Dr. Neely in April 2013, at which time the plaintiff had a full scale composite score of 63 (Tr. 16; *see* Tr. 308). While this circuit permits an ALJ to weigh conflicting IQ test results . . . ," *Hancock*, 667 F.3d at 474 (citing *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987)), the ALJ here apparently did not even consider the earlier IQ scores in his consideration of Listing 12.05, which was error. *See Gibson v. Colvin*, C.A. No. 1:16-664-SVH, 2016 WL 7209141, at *12 (D.S.C. Dec. 13, 2016) (finding ALJ erred in failing to evaluate IQ scores appearing in claimant's school records (citing *Odom v. Colvin*, C.A. No. 1:14-576-JMC, 2015 WL 3560685, at *4 (D.S.C. Jun. 5, 2015) (same))). Should the district court adopt the undersigned's recommendation that this case be remanded, the ALJ should be instructed to evaluate and weigh all of the plaintiff's IQ test results in his consideration of this listing.

---

. and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded . . . " 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05A. The ALJ specifically considered paragraph A and found that the plaintiff did not meet the listing because she could perform her personal needs independently and was able to focus her attention such that standardized measures of intellectual functioning were possible (Tr. 16). This finding is based upon substantial evidence and is without error. The plaintiff contends that the ALJ should have considered whether her processing speed score of 59 on the WAIS-IV constitutes medical equivalence to the listing. However, she does not develop this argument or demonstrate how this score medically equals the requirements of Listing 12.05A. Accordingly, the undersigned finds no error in this regard.

[4]The ALJ mistakenly stated that the plaintiff was 17 years old and in the twelfth grade at the time of these IQ scores (Tr. 17; *see* Tr. 266-68).

The plaintiff further argues that the ALJ erred in giving significant weight to the IQ testing by Dr. Neely in 2013 because Dr. Neely did not list verbal or performance IQ scores, which "is significant because sometimes Verbal IQ scores and Performance IQ scores may be lower than Full Scale IQ score[s], which could thus be below 60 and therefore satisfy Listing 12.05B" (doc. 16 at 3). However, Dr. Neely used the WAIS-IV in testing the plaintiff (Tr. 307-10). "The terms 'Verbal IQ' and 'Performance IQ' from the WAIS–III were replaced with 'Verbal Comprehension' and 'Perceptual Reasoning' in the WAIS–IV. Verbal Comprehension and Perceptual Reasoning should be substituted for Verbal IQ and Performance IQ, respectively." *Troxel v. Colvin*, C.A. No. C13-0057, 2014 WL 1323637, at *8 n.3 (N.D. Iowa, Apr. 1, 2014) (citing *Pierson v. Colvin*, 960 F.Supp.2d 933, 936–37, nn.4, 5 (S.D. Iowa 2013) (discussing the terminology changes from the WAIS–III to WAIS–IV)). *See Martin v. Comm'r, Soc. Sec. Admin.*, C.A. No. SAG-12-1130, 2013 WL 4512071, at *2 (D. Md. Aug. 22, 2013) ("Because the various tests have been modified since the Listings were created, the 'verbal comprehension index score' is the equivalent of 'verbal IQ,' and the 'perceptional reasoning index score' is the equivalent of 'performance IQ.'") (citation omitted). Accordingly, while the ALJ should have also considered the earlier IQ scores from the plaintiff's school records in his evaluation of Listing 12.05B, the plaintiff's argument regarding the reliability of the 2013 IQ scores based upon the absence of verbal IQ and performance IQ scores is without merit.

The plaintiff also argues that the ALJ misstated the requirements of Listing 12.05B by requiring a mental impairment resulting in at least two of the following: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration (doc. 16 at 4; doc. 18 at 5). The plaintiff argues, "That is 12.05D, not 12.05B. Indeed, the paragraph [in the ALJ's decision] mixes the two, but never actually considers part B" (doc. 16 at 4). The plaintiff is correct that this

11

is part of the criteria of Listing 12.05D rather than Listing 12.05B, but the plaintiff is incorrect in arguing that the ALJ misstated the requirements of Listing 12.05B. In the listing analysis, the ALJ considered both Listing 12.02 (Organic Mental Disorders) and Listing 12.05 (Tr. 15). In his analysis, the ALJ discussed the requirements of paragraph B of Listing 12.02 and paragraph D of Listing 12.05, both of which require at least two of the categories set forth above (*see* Tr. 15).[5] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.02B, 12.05D. This discussion was unrelated to the ALJ's findings as to Listing 12.05B, which were made on the following page of the decision (*see* Tr. 16). Accordingly, while the ALJ should have also considered the earlier IQ scores from the plaintiff's school records in his evaluation of Listing 12.05B as discussed above, the ALJ did not err in misstating the requirements of Listing 12.05B.

With regard to paragraph C of Listing 12.05, the ALJ first stated that the plaintiff did not meet its requirements because she did "not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 16). Just prior to this statement, the ALJ acknowledged that the plaintiff's "full scale IQ was found to be 63" in Dr. Neely's testing in April 2013 (Tr. 16). Thus, it appears that the ALJ reasoned that the plaintiff did not meet the additional requirement of an "impairment imposing an additional and significant work-related limitation of function." However, the ALJ found the plaintiff's petit mal seizure disorder to be severe (Tr. 14) and limited her RFC to "avoiding all exposure to hazards," presumably based upon the seizure disorder (Tr. 16-18). As argued by the plaintiff (doc. 16 at 4), this is clearly a physical impairment imposing an

---

[5]The ALJ found as follows: "Because the clamant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria ('paragraph D' criteria of listing 12.05) are not satisfied" (Tr. 15).

12

additional and significant work-related limitation of function, and any such finding otherwise cannot be based upon substantial evidence.

The ALJ further found that the plaintiff did not meet Listing 12.05C because she "has shown no deficits in adaptive functioning" (Tr. 16). To meet the diagnostic description or "capsule definition" of intellectual disability, an individual must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. This has been described by the Fourth Circuit Court of Appeals as "Prong 1" of Listing 12.05. *See Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). " '[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age . . . . " Program Operations Manual System ("POMS") § DI 24515.056(D)(2). "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

The ALJ found that the plaintiff's ability "to work successfully for 8 years" and "to maintain a job with the same employer [Big Lots] for 5 years" evidenced that she had no deficits in adaptive functioning (Tr. 16, 18). Work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989), can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. *Hancock*, 667 F.3d at 475–76 (concluding that the ALJ's finding that the claimant did not manifest requisite deficits in adaptive functioning was supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); *Harts*

*v. Astrue*, C.A. No. 0:10–1893–CMC–PJG, 2012 WL 529982, at *6 n. 3 (D.S.C. Jan.30, 2012) (distinguishing *Luckey* because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning), *adopted by* 2012 WL 529980 (D.S.C. Feb.17, 2012). The plaintiff's work history demonstrates that, while she was hired as a cashier at Big Lots, she could not understand the cash register, and, therefore, her duties changed to straightening shelves. In her most recent work at a laundromat, she cleaned bathrooms and wiped out washers and dryers (Tr. 30, 221-22). This court has traditionally upheld ALJs' findings that plaintiffs lacked deficits in adaptive functioning where the plaintiffs were able to perform skilled and semiskilled work. *See Gibson*, 2016 WL 7209141, at *13 (citations omitted). However, here, the plaintiff's ability to perform the clearly unskilled work described above, without more, does not provide substantial evidence in support of the ALJ's finding that the plaintiff lacked deficits in adaptive functioning. *See Davis v. Astrue*, C.A. No. 2:07-1621-JFA-RSC, 2008 WL 1826493, at *5 (D.S.C. Apr. 23, 2008) (noting "the quality and character of the plaintiff's work as a cleaning lady hardly overcomes the presumption that the plaintiff's IQ was constant over her life").

In further support of the finding that the plaintiff lacked deficits in adaptive functioning, the ALJ noted that the plaintiff had maintained a "friendship . . . with Harry Waiters, her boyfriend and father of her younger child" (doc. 16). The plaintiff argues, "[T]he ALJ seems to be suggesting that Plaintiff is not mentally retarded because someone was able to persuade her to have sex and have a child. This simply makes no sense whatsoever" (doc. 16 at 5). As noted above, "[d]eficits in adaptive functioning can include limitations in areas such as . . . self-care, home living, [and] social/interpersonal skills . . . ."*Jackson*, 467 F. App'x at 218 (citing *Atkins*, 536 U.S. at 309 n.3). However, the fact that a claimant "is able to work, raise a family, and otherwise live successfully in the community does not necessarily preclude a finding of mild mental retardation where other deficits in

14

adaptive functioning are present." *Glenn v. Colvin*, C.A. No. 8:13-2099-BHH, 2015 WL 628518, at *3 (D.S.C. Feb. 12, 2015) (citing *Davis*, 2008 WL 1826493, at *4). In that regard, the undersigned finds that the ALJ erred in failing to consider the plaintiff's school records in his consideration of her deficits in adaptive functioning. While the ALJ acknowledged in the RFC assessment that the plaintiff was in special education classes in high school and was found to have a full scale IQ of 53 (Tr. 17-18; *see* Tr. 28, 266), he apparently did not consider and weigh this and other evidence in the plaintiff's school records that to her adaptive functioning abilities. Specifically, in addition to the IQ scores obtained when the plaintiff was 12 years old (Tr. 266), the record shows that the plaintiff was in a "self-contained class for the educable mentally disabled" in elementary and high school and was found to be eligible for an IEP in special education (Tr. 266-91). Testing when the plaintiff was 12 years old also demonstrated that her reading and spelling performance was at a first grade level, and her arithmetic performance was at a second grade level (Tr. 269). The Vineland Adaptive Behavior Scale revealed that the plaintiff's communication was at the age equivalent of six years, four months; her daily living skills were at the age equivalent of seven years, six months; and her socialization skills were at the age equivalent of three years, eight months (Tr. 270). At the age of 18, when the plaintiff was in the twelfth grade, she functioned at three to four grade levels below her peers, and she needed one on one instruction (Tr. 278).

Based upon the foregoing, the court cannot determine that the Commissioner's decision that the plaintiff did not meet or medically equal Listing 12.05 is supported by substantial evidence. Accordingly, remand is appropriate in light of the ALJ's failure to address and resolve the evidence discussed above.

***Remaining Allegations of Error***

In light of the court's recommendation that this matter be remanded for further consideration of Listing 12.05 at step three of the sequential evaluation process, the court

need not address the plaintiff's remaining issues as they may be rendered moot on remand. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments); *Hancock v. Barnhart*, 206 F. Supp.2d 757, 763–764 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect as it is vacated and the new hearing is conducted *de novo*). However, if on remand the ALJ finds that the plaintiff's impairments do not meet or equal Listing 12.05 and proceeds to the following steps, the ALJ should consider the plaintiff's additional allegations of error in the evaluation of the entire record. Specifically, the ALJ should consider the plaintiff's arguments regarding the RFC finding and need for vocational expert testimony (doc. 16 at 8-17).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing, it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

April 13, 2017
Greenville, South Carolina

16